IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,

        Plaintiff,

  v.                                  CIVIL ACTION FILE NO.:

PRIMUS BUILDERS, INC., and
P3 ADVANTAGE, INC.,

        Defendants.

## PETITION FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff National Union Fire Insurance Company of Pittsburgh, Pa., ("National Union") and files this Petition for Declaratory Judgment against Primus Builders, Inc. ("Primus") and P3 Advantage, Inc. ("P3") pursuant to Fed. R. Civ. P. 57 to determine the rights and obligations of the parties, alleging and showing as follows:

## INTRODUCTION

1.    This is an action for Declaratory Judgment pursuant to 28 U.S.C. § 2201 to determine and resolve questions of actual controversy involving National Union's right and duty to defend its insureds Primus and P3 pursuant to a

commercial general liability insurance policy issued by National Union to Primus and under which P3 is also a named insured.

2.     National Union is providing Primus and P3 with a defense in several civil actions pursuant to reservations of rights, and has selected and assigned defense counsel with the law firm Gallivan White & Boyd, P.A. ("GWB"). National Union seeks a declaration that it has no duty to indemnify, reimburse or otherwise pay Primus and/or P3 for other counsel Primus and/or P3 may associate in the defense of the following:

(a)     A suit filed in the General Court of Justice, Superior Court Division, Iredell County, North Carolina, styled *Jared Stone, as Public Administrator for the Estate of Anthony Edward Lamattina vs. LLH MRS Master RE, LLC; Lineage Logistics, LLC; Primus Builders, Inc.; Republic Refrigeration Incorporated, and The Innovative Contracting Group, LLC*, Case No. 20CVS3109 (the "Lamattina Suit"). A copy of the Lamattina Suit Complaint is attached hereto as Exhibit "A"; and

(b)     A suit filed in the United States District Court for the Western District of North Carolina, Statesville Division, styled *DFA Dairy Brands, LLC, as successor in interest to Dean Foods Company v. Primus Builders, Inc. and P3 Advantage, Inc.,* Civil Action File No. 5:21-cv-

00026-KDB-DSC (the "Dean Foods Suit").  A copy of the Dean Foods Suit Complaint is attached hereto as Exhibit "B";

(c)     In connection with other asserted and pending claims for alleged "property damage" arising out of a January 10, 2020 ammonia leak at a refrigerated warehouse located in Statesville, North Carolina and owned by Lineage Logistics, LLC ("Lineage") that are not presently the subject of any suit (the "PD Claims").

## THE PARTIES

3.     National Union is a corporation formed in Pennsylvania, with its principal place of business in New York, New York.

4.     Upon information and belief, Primus is a corporation formed in Georgia, with its principal place of business in Woodstock, Georgia.  Primus may be served via its Registered Agent, Richard O'Connell, 8294 Highway 92, Suite 210, Woodstock, Georgia 30189.

5.     Upon information and belief, P3 is a corporation formed in Georgia, with its principal place of business in Roswell, Georgia.  P3 may be served via its Registered Agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia  30092.

6.     There is complete diversity of citizenship between the parties.

## JURISDICTION AND VENUE

7.      The Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship among the parties, and the matter in controversy exceeds Seventy-Five Thousand Dollars ($75,000).

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the National Union insurance policy that is the subject of this action was issued and delivered in this District.

## RELEVANT FACTS AND UNDERLYING ACTIONS

9.      Primus was the general contractor on a project to renovate six blast cells in the anhydrous ammonia refrigeration system at Lineage's refrigerated warehouse in Statesville, North Carolina (the "Project").  P3 is an affiliated company of Primus, and supplied labor to Primus on the Project.  On January 10, 2020, an incident occurred on the Project causing pressurized ammonia to leak from the refrigerated coils throughout the warehouse.  One P3 employee, Anthony Lamattina ("Lamattina") died at the scene and another P3 employee was allegedly badly injured.

10.     Anhydrous ammonia is classified as highly hazardous by the Environmental Protection Agency (EPA) and the Occupational Safety Hazard Administration (OSHA).

11.    The ammonia leak allegedly caused damage to Lineage's warehouse, and allegedly contaminated and damaged the food products stored in the warehouse by Lineage's customers, including Dean Foods' ice cream, making the food products unfit for consumption.   The ammonia leak led to workers' compensation claims by the P3 employees, property damage claims by Lineage and Lineage's customers, including Dean Foods (i.e., the PD Claims), as well as investigations by the Environmental Protection Agency ("EPA"), and the Occupational, Safety and Health Administration ("OSHA").

12.    Primus selected its own defense counsel, Taylor, English, Duma LLP ("TED"), to investigate the circumstances surrounding the January 10, 2020 ammonia leak and represent its interests, and sought National Union's approval for the retention of TED.   National Union approved TED as "exception counsel" to represent Primus in connection with the potential bodily injury and property damage claims that might arise out of the January 10, 2020 ammonia leak, and provided TED with AIG's Litigation Guidelines.   Hourly rates were negotiated with TED for partners, associates, and paralegals, with Primus agreeing to pay the difference between TED's quoted hourly rates and the negotiated rate National Union agreed to pay.

13.     Because TED represented Primus in various matters arising out of the ammonia leak, some of which were potentially covered under the Policy (potential bodily injury and property damage claims), and some of which were not potentially covered under the Policy (including but not necessarily limited to the workers' compensation clams, and the EPA and OSHA investigations), National Union instructed TED to separate its billing, and to submit its bills electronically through a third-party administrator's billing system.

14.     In July 2020, TED provided National Union with an Agreed-To-Litigation Plan ("ATLP"), which was required by AIG's Litigation Guidelines, providing an overview and summary of the facts of the incident, legal theories of liability, the insured's potential for exposure to liability, and other information that is necessary for National Union to evaluate and adjust a claim.  The July 2020 ATLP was the first time TED provided National Union with sufficient information to evaluate coverage issues under the Policy.

15.     On October 21, 2020, National Union issued a reservation of rights letter to Primus respecting the potential bodily injury and property damage claims that might arise out of the January 10, 2020 ammonia leak.  In October 2020, no suits were then pending against Primus, and therefore no duty to defend under the

Policy was implicated.  Primus did not object to the October 21, 2020 reservation of rights.

16.     Lineage and some of the contractors on the Project sought to resolve the PD Claims (but not Dean Foods' claim) via mediation. The first mediation occurred in late-October 2020, and a second mediation occurred in late-January 2021; neither mediation led to a resolution of the PD Claims.  At both mediations, National Union together with the other insurers who issued insurance policies to Primus collectively observed and noted that TED had failed to adequately summarize and report critical information respecting the facts of the property damage claims, the alleged damages, and the respective exposure to liability of the various contractors on the Project, information that was necessary for the insurers to properly evaluate and potentially resolve the PD Claims.  These deficiencies were identified in several emails to TED from National Union and another insurer.

17.     Upon the conclusion of the October 2020 mediation, National Union requested that TED provide seven different categories of additional information necessary to properly evaluate the property damage claims.  At the January 2021 mediation, National Union and another insurer advised TED that specific, additional information was required, including a damages calculation and liability

analysis, in order for the insurers to properly evaluate and potentially resolve the PD claims.

18.     At approximately the same time as the second mediation (late-January 2021), National Union identified billings by TED that were contrary to the instructions previously provided.  In February 1, 2021 correspondence, National Union informed TED of the billing issues that had been identified, demanded that the billing instructions be followed, and informed TED that the invoices were being audited.

19.     National Union audited TED's 2020 invoices, and the results were returned in March 2021.  The billing issues identified were grouped into the following categories pertaining to: (1) the not potentially covered EPA/OSHA/Workers Compensation actions; (2) not potentially covered coverage activities; (3) interoffice communications in excess of AIG's Litigation Guidelines; (4) excessive rate for Timekeeper level based on the negotiated rates; (5) task assigned to improper Timekeeper level, and (6) miscellaneous.  In April 9, 2021 correspondence, National Union informed TED of the results of the audit and National Union's intention to recoup the overpayment.  TED subsequently acknowledged that certain billing entries were not chargeable under the Policy.

20.    The Lamattina Suit was filed against Primus and several other defendants in late-January 2021 (See Exhibit A).    In February 24, 2021 correspondence, National Union agreed to defend Primus in the Lamattina suit pursuant to a reservation of rights, and assigned the law firm GWB as defense counsel to protect Primus' interests.    Primus did not object to National Union providing a defense in the Lamattina Suit by GWB pursuant to the reservation of rights.

21.    The Dean Foods Suit was filed against Primus and P3 in late-February 2021 (See Exhibit B), and initially TED defended Primus and P3.    Based upon TED's inadequate reporting and communications respecting the PD Claims, coupled with the billing issues identified in the audit of TED's invoices, National Union advised TED of National Union's decision to transfer to GWB the defense of Primus and P3 in the Dean Foods suit and the PD Claims on April 9, 2021. Primus' other insurers concurred with the decision to transfer the defense. National Union also informed Primus and P3 about what it considered to be TED's inadequate reporting and communications respecting the PD Claims supporting the decision to transfer the defense.

22.    National Union agreed to defend Primus and P3 in the Dean Foods suit and the PD Claims pursuant to a reservation of rights, and on April 9, 2021

transferred the defense to GWB as defense counsel to protect Primus and P3's interests.  On May 5, 2021, Primus provided a Memorandum to National Union objecting to the defense being provided by GWB pursuant to the reservation of rights ("the Memorandum").

23.     Based on the Memorandum, National Union understands Primus and P3 to contend that (a) National Union does not have the right to select defense counsel in the Dean Foods Suit and the PD Claims or reassign the defense of those matters to GWB, and that (b) National Union's decision to reassign the defense was based solely on the results of the audit, was made in bad faith, and creates a conflict with the insureds entitling them to retain other counsel at National Union's expense.  National Union understands the Memorandum to set forth the bases for Primus' objection to the defense of Primus and P3 in the Dean Foods Suit and the PD Claims by GWB pursuant to the reservation of rights.

24.     In light of Primus' apparent objection to National Union providing a defense by GWB in the Dean Foods Suit and PD Claims pursuant to the reservation of rights, National Union issued a June 11, 2021 supplemented and amended reservation of rights to Primus and P3 respecting those matters.  In accordance with applicable Georgia law, National Union continues to take the necessary steps to prevent Primus and/or P3 from being otherwise prejudiced in the

Dean Foods Suit or the PD Claims, respectfully seeks declaratory relief from this Court, and will move to intervene in the Dean Foods Suit.

## THE NATIONAL UNION POLICY

25.    National Union issued a commercial general liability insurance policy to Primus bearing policy number GL 518-01-98, effective March 1, 2019 to March 1, 2020 (the "Policy").  The Policy has two coverage parts: "Coverage A – Bodily Injury and Property Damage Liability," and "Coverage B – Personal and Advertising Injury Liability."  Coverage under the Policy's Coverage B part is not implicated by the Dean Foods Suit, the Lamattina Suit, or the PD Claims, and there is no present and actual controversy between the parties regarding the lack of such coverage.  A copy of the Policy is attached hereto as Exhibit "C."

26.    The insuring agreement for Coverage A of the Policy provides in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
> * * *

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provide for under Supplementary Payments – Coverages **A** and **B**.

27.     The Policy's provision entitled **Supplementary Payments – Coverages A and B**, provides in relevant part:

> **1.**     We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
>
> > **a.**     All expenses we incur . . . .

28.     Section IV. of the Policy, entitled **COMMERCIAL GENERAL LIABILITY CONDITIONS**, subparagraph 2, "**Duties In The Event Of Occurrence, Offense, Claim Or Suit**," provides in relevant part:

> c.     You and any other involved insured must:
>
> * * *
>
> > (3)     Cooperate with us in the investigation or settlement of the claim or defense against the "suit";
>
> * * *
>
> d.     No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

<u>**COUNT I**</u>
**(National Union Has The Right To Select Defense Counsel)**

29.    National Union restates and re-alleges Paragraphs 1 through 28 as though fully set forth herein.

30.    Pursuant to the Policy's Coverage A insuring agreement, National Union has "the right and duty to defend the insured against any 'suit' seeking" damages for "bodily injury" or "property damage," as those terms are defined in the Policy.

31.    National Union's "right and duty to defend" includes the right to select defense counsel.

32.    National Union exercised its right to select defense counsel and retained the law firm GWB to defend Primus in the Lamattina Suit pursuant to a reservation of rights, to which Primus did not object and impliedly consented.

33.    National Union exercised its right to select defense counsel and at Primus's request agreed to retain TED to provide Primus with a defense in the PD Claims pursuant to a reservation of rights, to which Primus did not object and impliedly consented.

34.    After originally agreeing to retain TED as "exception counsel" to defend Primus in the PD Claims pursuant to a reservation of rights, National Union exercised its right to select defense counsel and transferred the defense of Primus,

together with the defense of P3 in the Dean Foods Suit and in the PD Claims to the law firm GWB pursuant to a reservation of rights.

35.     Pursuant to the Policy, National Union has the right to select or assign defense counsel for Primus and/or P3 in the Lamattina Suit, the Dean Foods Suit, and the PD Claims.

36.     The Policy does not include any provision(s) providing the insured(s) the right to select or assign defense counsel.

## COUNT II
### (Where A Defense Is Provided Pursuant to A Reservation of Rights, No Conflict Is Created That Would Otherwise Entitle An Insured To Retain Other Counsel At National Union's Expense)

37.     National Union restates and re-alleges Paragraphs 1 through 36 as though fully set forth herein.

38.     National Union issued an October 21, 2020 reservation of rights letter to Primus agreeing to provide it with a defense by TED to potential bodily injury and property damage claims pursuant to the reservation of rights.  National Union expressly reserved the right to assert additional defenses to coverage if subsequent information indicated that such action was warranted.

39.     Primus did not object to the October 21, 2020 reservation of rights, and therefore Primus impliedly consented to National Union's agreement to provide a defense pursuant to the reservation of rights.

40.     National Union issued a February 24, 2021 reservation of rights letter to Primus agreeing to provide it with a defense by GWB in the Lamattina Suit pursuant to the reservation of rights.  National Union expressly reserved the right to assert additional defenses to coverage if subsequent information indicated that such action was warranted.

41.     Primus did not object to the February 24, 2021 reservation of rights, and therefore Primus impliedly consented to National Union's agreement to provide a defense pursuant to the reservation of rights.

42.     National Union issued an April 9, 2021 reservation of rights letter to Primus and P3 agreeing to provide them with a defense by GWB in the Dean Foods Suit and the PD Claims pursuant to the reservation of rights.  National Union expressly reserved the right to assert additional defenses to coverage if subsequent information indicated that such action was warranted.

43.     National Union's issuance of the October 21, 2020, February 24, 2021, and April 9, 2021 reservations of rights were not denials of coverage, and therefore did not create a conflict of interest with its insureds.

44.     Because National Union's issuance of the reservations of rights are not denials of coverage and do not, under Georgia law, create a conflict of interest with its insureds, Primus and P3 are not on this basis entitled to retain other

counsel of their selection and at National Union's cost to represent their interests in the Lamattina Suit, the Dean Foods Suit, or the PD Claims.

## COUNT III
### (National Union Had Reasonable Grounds To Transfer The Defense Of The Dean Foods Suit And PD Claims To GWB)

45.     National Union restates and re-alleges Paragraphs 1 through 44 as though fully set forth herein.

46.     National Union exercised its right to select and assign defense counsel when it initially agreed to Primus' retention of TED in the defense of the PD Claims, assigned the defense of the Lamattina Suit to GWB, and when it subsequently transferred the defense of the Dean Foods Suit and PD Claims to GWB, all pursuant to reservations of rights.

47.     The decision to transfer the defense of the Dean Foods Suit and PD Claims to GWB was based on (a) TED's inadequate reporting and communications to National Union and the other insurers respecting the PD Claims, which prevented National Union and the other insurers from effectively evaluating the PD Claims, *in addition to* (b) the billing issues that were discovered upon National Union's auditing TED's 2020 invoices, wherein TED subsequently acknowledged that certain billing entries were not chargeable under the Policy.

48.     National Union informed Primus and P3 about what it considered to be TED's inadequate reporting and communications respecting the PD Claims supporting the decision to transfer the defense.

49.     Primus and P3's other insurers concurred with the decision to transfer the defense of the Dean Foods Suit and PD Claims to GWB based on TED's inadequate reporting and communications to the insurers respecting the PD Claims.

50.     Reasonable grounds existed to transfer the defense of the Dean Foods Suit and PD Claims to GWB.

## COUNT IV
### (Any Defense Fees and Expenses Incurred By Primus and/or P3 After April 9, 2021 For Other Counsel Are Voluntary Payments At Their Own Cost)

51.     National Union restates and re-alleges Paragraphs 1 through 50 as though fully set forth herein.

52.     Primus and/or P3 have indicated that they may retain other counsel to protect their interests in connection with the Lamattina Suit, the Dean Foods Suit, and/or the PD Claims.

53.     To the extent that Primus and/or P3 retain other counsel to protect their interests in connection with the Lamattina Suit, the Dean Foods Suit, and/or the PD Claims, any defense fees and expenses incurred by such other counsel on

behalf of Primus and/or P3 after April 9, 2021 are "voluntary payments" within the meaning of the Policy, and are at Primus and/or P3's own cost and expense.

54.     National Union has no obligation to indemnify, reimburse, or otherwise pay Primus and/or P3 for other counsel they may wish to retain to protect their interests in connection with the Lamattina Suit, the Dean Foods Suit, and/or the PD Claims.

WHEREFORE, National Union respectfully requests that this Court enter an Order:

1.     Finding the following:

    (a)     National Union has the right to select defense counsel for its insureds in the Lamattina Suit, the Dean Foods Suit, and in connection with the PD Claims;

    (b)     The reservations of rights letters issued by National Union to its insureds were not denials of coverage, and therefore did not create a conflict of interest with its insureds entitling them to retain other counsel at National Union's expense;

    (c)     The decision to transfer the defense of Primus and P3 in the Dean Foods Suit and the PD Claims was based upon reasonable grounds.

(d)    To the extent that Primus and/or P3 incur defense fees and expenses of other counsel they may retain to protect their interests in connection with the Lamattina Suit, the Dean Foods Suit and/or the PD Claims, doing so is at their own cost and expense as "voluntary payments" within the meaning of the Policy, and National Union is not obligated to indemnify, reimburse, or otherwise pay Primus and/or P3 for same;

4.    For costs of suit incurred herein; and

5.    For other such relief as this Court deems just and proper.

Dated:  June 14, 2021.

WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC

*/s/ Nancy F. Rigby*
John C. Bonnie
Georgia Bar No. 067540
Nancy F. Rigby
Georgia Bar No. 605453

*Counsel for National Union Fire Insurance Company of Pittsburgh, Pa.*

3344 Peachtree Road NE, Suite 2400
Atlanta, Georgia 30326
404-876-2700 – telephone
404-875-9433 – facsimile
jbonnie@wwhgd.com
nrigby@wwhgd.com

19