# EXHIBIT A

STATE OF NORTH CAROLINA

COUNTY OF IREDELL

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 2109

| | |
|---|---|
| Jared Stone, as Public Administrator for the Estate of Anthony Edward Lamattina,<br><br>           Plaintiff,<br><br>v.<br><br>LLH MRS Master RE, LLC, Lineage Logistics, LLC, Primus Builders, Inc., Republic Refrigeration Incorporated & The Innovative Contracting Group, LLC,<br><br>           Defendants. | COMPLAINT<br>FOR WRONGFUL DEATH |

NOW COMES the Plaintiff, Jared Stone, as Public Administrator for the estate of Anthony Edward Lamattina, complaining of the defendants, and hereby states as follows:

## PARTIES

1.     Anthony Edward Lamattina ["Mr. Lamattina], deceased, was born on November 29, 1989. He was the only child of Gayann Marie (Dressler) Lamattina and Vincent Michael Lamattina. He died on January 10, 2020. According to the death certificate issued by the State of North Carolina, Iredell County, Office of Registrar of Deeds, the immediate cause of death was listed as, "cutaneous + inhalation chemical injuries."

2.     By all accounts, Mr. Lamattina endured extreme pain and suffering prior to his death. Mr. Lamattina's death was easily and utterly avoidable had the above defendants met their duties of care each of them separately to Mr. Lamattina.

3.     Jared Stone was appointed Public Administrator of the Estate of Anthony Edward Lamattina by James Lee Mixon III, Ex Officio Judge of Probate, Iredell County Clerk of Superior Court. Jared Stone serves as the duly appointed Public Administrator of the Estate of Anthony Edward Lamattina and he is the Plaintiff in this action for Wrongful Death.

4.     At the time of his death, Mr. Lamattina was an employee of P3 Advantage Inc. ["P3 Advantage"] and was working in the course and scope of his employment with P3 Advantage, and in furtherance of P3 Advantage's business.

5.     Mr. Lamattina, through his next of kin, initiated a workers compensation claim for death benefits in North Carolina against P3 Advantage, as the Employer. The matter was under the jurisdiction of the North Carolina Industrial Commission, IC file # 20-705996. P3 Advantage filed an "Employer's Admission of Employee's Right to Compensation," with the North Carolina Industrial Commission, pursuant to N.C. Gen. Stat. § 97-18(b), and has paid death benefits under this act. The North Carolina Industrial Commission has jurisdiction to approve any settlement obtained by the Plaintiff against the defendants in this lawsuit.

6.     LLH MRS Master RE, LLC ["LLH"] is a limited liability corporation, incorporated in Delaware, that operates and owns property in North Carolina. At all times relevant to Plaintiff's Complaint, LLH owned the property and cold storage and refrigeration warehouse located at or near 337 Taylorsville Hwy, Statesville, North Carolina [the "Facility"]. LLH was in at least partial possession of and in partial control over portions of the Facility at all times relevant to Plaintiff's Complaint.

7.     The registered agent in North Carolina for LLH is Corporation Service Company at 2626 Glenwood Avenue, Suite 550, Raleigh, NC  27608.

2

8.     Lineage Logistics, LLC ["Lineage Logistics"] is a limited liability corporation, incorporated in Delaware, that does business in Iredell County, North Carolina.  At all times relevant to Plaintiff's Complaint, Lineage Logistics was a leasee and/or possessor of the Facility and was conducting business and operating out of the Facility.  Lineage Logistics was in at least partial possession of and in partial control over portions of the Facility at all times relevant to Plaintiff's Complaint.

9.     The registered agent for Lineage Logistics in North Carolina is Corporation Service Company, 2626 Glenwood Avenue, Suite 550, Raleigh, NC  27609.

10.    Primus Builders, Inc. ["Primus"] is a corporation with principal offices located in the State of Georgia and conducts business in North Carolina.  At the time of Mr. Lamattina's Wrongful Death, Primus was working, upon information and belief, as the general contractor for a major renovation project to an approximate 54,000 pound anhydrous ammonia refrigeration system at the Facility.  The renovation project described in this paragraph is referred to hereafter as the "Project."  As such, it was in possession over and in at least partial control of the Facility at the time of Mr. Lamattina's Wrongful Death.

11.    Primus's registered agent in North Carolina is Corporation Service Company, 2626 Glenwood Ave., Suite 550, Raleigh, NC  27608.

12.    Republic Refrigeration Incorporated ["Republic Refrigeration"] is a North Carolina corporation with its principal place of business in North Carolina.  At all times relevant to Plaintiff's Complaint, it was performing work on the Project, upon information and belief, as a contractor or subcontractor.  As such, it was in possession over and in at least partial control of the Facility at the time of Mr. Lamattina's Wrongful Death.

3

13.    The registered agent for Republic Refrigeration in North Carolina is Walter F. Teeter. His address is 2810 Gray Fox Road, Monroe, NC 28110-8422.

14.    The Innovative Contracting Group, LLC ["Innovative"] is a North Carolina limited liability company with its principal place of business in North Carolina. At all times relevant to Plaintiff's Complaint, Innovative was performing work on the Project, upon information and belief, as a contractor or subcontractor. As such, it was in possession over and in at least partial control of the Facility at the time of Mr. Lamattina's Wrongful Death.

15.    The registered agent for Innovative is Donnie McNeil, 6368 Crestline Road, Laurinburg, NC 28352-1788,

## JURISDICTION

16.    Jurisdiction and venue are proper because all acts and omissions of the defendants occurred in Iredell County, North Carolina. All defendants conduct business in North Carolina. Mr. Lamattina's death occurred in Iredell County, North Carolina. Plaintiff was appointed public administrator of Mr. Lamattina's estate in Iredell County, North Carolina.

## FACTS

17.    On January 10, 2020, Mr. Lamattina was an employee of P3 Advantage working at the Facility in the course and scope of his employment with P3 Advantage. All work performed by Mr. Lamattina on this day was done in furtherance of P3 Advantage's business. P3 Advantage, upon information and belief, had a contract with Primus to provide certain services and/or labor for Primus's use on various projects.

18.    P3 Advantage, as Mr. Lamattina's employer, issued Mr. Lamattina W-2s and earning summaries under its name. P3 Advantage reported to the IRS and Georgia Department of

4

Revenue that Mr. Lamattina was its employee. Upon information and belief, only P3 Advantage retained the authority to hire and/or fire Mr. Lamattina. Mr. Lamattina did not have a contract for hire with any other entity.

19.     Upon information and belief, at all times relevant to Plaintiff's Complaint, Mr. Lamattina was supervised by a foreman who was an employee of P3 Advantage ["Foreman"]. It was the expectation of P3 Advantage, that Mr. Lamattina would follow the directions of this Foreman.

20.     Upon information and belief, Mr. Lamattina's employer, P3 Advantage, was working under a contract or agreement with Primus to perform certain work and/or provide certain labor as requested by Primus. The facts and circumstances of this case will reveal that at no time relevant to Plaintiff's Complaint was Primus a special or joint employer of Mr. Lamattina.

21.     At all times relevant to Plaintiff's Complaint, LLH was the legal owner of an approximately 54,000 pound anhydrous ammonia refrigeration system [the "System"]. LLH knew that the System contained pressurized anhydrous ammonia within its infrastructure and posed a severe risk of serious injury or death to those working on or around the System.

22.     At all times relevant to Plaintiff's Complaint, Linage Logistics was a leasee and operator of the Facility, which included the System. Lineage Logistics knew that the System contained pressurized anhydrous ammonia within its infrastructure and posed a severe risk of serious injury or death to those working on or around the System.

23.     Relevant to Plaintiff's Complaint, LLH and/or Linage Logistics undertook to implement a major renovation of the System. This decision to renovate the System resulted in entering in to a contract or contracts with others to work on the Project.

5

24.     Primus Builders, Republic Refrigeration, and Innovative knew or should have known that their particular scopes of work involved working in the area of, on, or near the System and that the System contained pressurized anhydrous ammonia within its infrastructure and posed a severe risk of serious injury or death to those working on or around the System.

25.     At all times relevant to Plaintiff's Complaint, it was foreseeable to all defendants that there were many workers and individuals working on, or associated with, the Project, and working in the vicinity of the System; and that if they failed to perform their scope of work within the standards of care and failed to maintain their work area free from hazards, people, such as Mr. Lamattina, could be seriously injured or killed.

26.     Anhydrous ammonia is commonly used in cold storage, refrigeration, and flash freezing operations.

27.     Anhydrous ammonia is an extremely hazardous chemical and is a known inhalation or toxic inhalation hazard.

28.     Anhydrous Ammonia is considered a high health hazard because it is corrosive to the skin, eyes, and lungs.  Exposure to 300 ppm is immediately dangerous to life and health.

29.     At all times relevant to Plaintiff's Complaint, LLH and Linage Logistics understood the inherent danger pressurized anhydrous ammonia presented to those working in or around the System.

30.     At all times relevant to Plaintiff's Complaint, Primus, Republic Refrigeration, and Innovative understood the inherent danger pressurized anhydrous ammonia presented to those working in or around the System.

31.     Despite knowing and understanding the dangers caused by the pressurized anhydrous ammonia in the System associated with their scope of work on the Project and located

6

at the Facility, Primus, Republic Refrigeration and Innovative each undertook an active and positive affirmative course of conduct in performing work at the Project.

32. At all times relevant to Plaintiff's Complaint, each of the defendants maintained at least partial control over certain areas of the Facility where dangerous pressurized anhydrous ammonia was located.

33. On January 10, 2020, LLH and Lineage Logistics allowed individuals to work on or near the System at the Facility without first assuring that the anhydrous ammonia in the area where they wanted work performed was not purged, shut off, locked out –tagged out, or otherwise eliminated.

34. In addition, at all times relevant to Plaintiff's Complaint, neither LLH nor Lineage Logistics took reasonable steps to select competent contractors who were qualified and had the requisite experience to work on the Project due to the presence of dangerous pressurized anhydrous ammonia in the System.

35. The defendants active course of conduct, resulted in the emergency exit(s) located in the Project area at the Facility to be impeded, blocked, and totally inadequate to allow for an unimpeded exit should the Facility experience an anhydrous ammonia release emergency.

36. Prior to Mr. Lamattina's death, Lineage Logistics suffered a similar anhydrous ammonia leak emergency during a renovation or construction project at one of its facilities located in a state other than North Carolina. Instead of learning from this experience and implementing reasonable measures to provide for the safety of its lawful visitors, Lineage Logistics continued to take improper measures to protect its lawful visitors from unreasonable risks of harm.

37. At all time relative to Plaintiff's Complaint, Primus, Republic Refrigeration, and Innovative each, while undertaking an active course of conduct in performing their scope of work

on the Project, did not take reasonable measures to properly purge or eliminate the anhydrous ammonia from their area of work. Nor did these defendants supply its workers with the proper safety equipment for those working around this hazard. Instead, these defendants instructed and directed their workers to perform construction and/or demolition work in close proximity of this known danger.

38.     In addition, directing a major renovation of, and performing work in and on conductors or pipes containing large amounts of anhydrous ammonia, a known hazardous chemical, is an inherently dangerous activity under the circumstances present in this case.

39.     On or about January 10, 2020, Mr. Lamattina was instructed by P3 Advantage's Foreman to perform certain labor tasks for the benefit of Primus pursuant to Primus' contract and scope of work on the Project. The work as directed by Primus involved, while on a lift 30-40 feet in the air, to open a wall as part of their demolition process.

40.     Upon information and belief, Primus took on the responsibility to train and or educate Mr. Lamattina about the dangers associated with the work on the Project. However, Primus utterly failed to warn Mr. Lamattina of, or otherwise failed take reasonable precautions not to expose him to the dangers of pressurized anhydrous ammonia while working on the Project.

41.     Upon information and belief, as the Foreman and Mr. Lamattina opened up the wall in question, they observed ice behind the wall. Said ice began melting onto the area below where others were working.

42.     Unbeknown to either the Foreman or Mr. Lamattina, the ice that was observed on the piping or coils in their work area that contained hazardous pressurized anhydrous ammonia.

43.     The area where Mr. Lamattina was performing labor on January 10, 2020, was within part of the Facility controlled (at least in part) by LLH and Lineage Logistics AND part of

the Facility that was controlled (at least in part) by Primus, Republic Refrigeration, and Innovative as part of their scopes of work on the Project.

44.     Upon information and belief, as part of performing their respective scopes of work on the Project, none of the defendants took any reasonable measures to train its workers about the presence of pressurized anhydrous ammonia and the hazards this chemical posed to them and others nearby during their work.

45.     Upon information and belief, at the request of a lawful visitor at the Facility, the Foreman instructed or gave his consent for Mr. Lamattina to break away the ice that was present in the defendants' area of work in order to prevent melting ice water dropping on to those working below the lift on behalf of the defendants.

46.     Upon information and belief, the Foreman, Mr. Lamattina, or both of them starting knocking off the ice from the above mentioned piping and/or coils.

47.     Suddenly and without warning to the Foreman and Mr. Lamattina, the System in the area were the defendants were performing their scope of work on the Project, experienced a pressurized anhydrous ammonia leak.

48.     Upon information and belief, Mr. Lamattina was sprayed in the face. Because the injuries from pressurized anhydrous ammonia are well documented, he would have immediately experienced severe pain and suffering as the ammonia burned his skin, his eyes, his mouth, his respiratory tract, and most all other areas of his body.

49.     In an effort to avoid the ammonia, Mr. Lamattina attempted to remove his shirt and, upon information and belief, jumped off the lift that may have malfunctioned.

50.     Upon information and belief, chaos ensued and there was no reasonably adequate safety plan in place that would have allowed the swift and required, unobstructed exit from the hazardous site.

51.     After experiencing severe pain and suffering due to being exposed to pressurized anhydrous ammonia, Mr. Lamattina, upon information and belief, attempted to shield himself from further injury and attempted to escape.  Upon information and belief, he was able to take off his shirt in an attempt to avoid the chemical and it is believed he jumped off of the lift.  Due, at least in part, to the lack of a safety and unobstructed exit plan caused to the joint affirmative acts of the defendants, Mr. Lamattina, upon information and belief, was unable to escape and succumbed to his injuries.  He died at the scene.

52.     Emergency responders from several state, local, and federal agencies responded to the hazardous ammonia leak.  The immediately instituted a rescue mission.  Many of the other workers at the Facility were trapped due to the lack of a safe exit escape route.

53.     The rescue team was able to rescue certain survivors.  However, Mr. Lamattina was not among them.  His body was recovered by the rescue team within the Facility.

54.     In addition the immediate area, the anhydrous ammonia release contaminated the Facility and the surrounding area.

55.     The North Carolina Department of Labor, Occupational Safety and Health Division investigated the incident and cited several of the defendants – Lineage Logistics, Primus, and Republic Refrigeration with multiple Serious Violations.  These Serious Violations constituted a course of conduct and standard of care that each violator breached.  Each defendant, with the exception of LLH and Innovative, was given a Serious Violations for their bad conduct and breach of the required standards of care.

10

56.     For example, Primus was cited for and committed a Serious Violation of NC OSH rules for "[p]rior to the beginning of demolition work, the hazard of stored chemical energy from anhydrous ammonia in the piping and evaporator of the blast freezer was not eliminated."

57.     In another example, Lineage Logistics was cited for and committed a Serious Violation of NC OSH rules because it "did not develop and implement safe work practices such as, but not limited to, purging the evaporator unit's ammonia lines, prior to demolition.."

58.     By way of a last example, Republic Refrigeration Incorporated was cited for and committed a Serious Violation of NC OSH rules because it did "verify each employee's training in safe work practices to isolate and purge a blast freezer being decommissioned."

59.     These were only a small portion of the NC OSH Serious Violations that Primus, Lineage Logistics, and Republic Refrigeration committed and were cited for due to their negligence, gross negligence, and willful and wanton conduct.

## FIRST CLAIM OF RELIEF – PREMISES LIABILITY

60.     Plaintiff refers to and hereby incorporates all of his previous paragraphs of the Complaint as if they were set forth herein verbatim.

61.     Defendants LLH and Lineage Logistics, as owner and/or possessor of the Facility, each owed a duty to exercise reasonable care to provide for the safety for all lawful visitors, such as Mr. Lamattina, at the Facility.

62.     Primus, as the general contractor on the project, additionally owed a duty to exercise reasonable care to provide for the safety for all lawful visitors, such as Mr. Lamattina, working in the area and in the scope of Primus's general contract.

11

63.   LLH and Lineage Logistics are required to use ordinary care to keep the premises in a reasonably safe condition for lawful visitors, such as Mr. Lamattina, who use the premises in a reasonable and ordinary manner.

64.   Primus as general contractor and possessor of the area of the work under its general contract also is required to use ordinary care to keep the premises in a reasonably safe condition for lawful visitors, such as Mr. Lamattina, who use the premises in a reasonable and ordinary manner.

65.   Additionally LLH, Lineage Logistics, and Primus owed its lawful visitors, such as Mr. Lamattina, a duty to exercise ordinary care to furnish reasonable protection against the consequences of hidden dangers known or which out to be known by them.

66.   LLH, Lineage Logistics, and Primus owed its lawful visitors, such as Mr. Lamattina, a duty to make reasonable inspections to ascertain the existence of hidden dangers known to them such as the presence of pressurized anhydrous ammonia in the System.

67.   LHH, Lineage Logistics, and Primus owed its lawful visitors, such as Mr. Lamattina, a duty to create a safety plan and to implement reasonable escape routes and exits should the Facility experience a hazardous event, such as a pressurized anhydrous ammonia release.

68.   In addition, LLH, Lineage Logistics, and Primus also owe a duty to Mr. Lamattina to make reasonable inspections and correct unsafe conditions.

69.   LLH, Lineage Logistics, and Primus breached their duties owed to Mr. Lamattina by creating and failing to mitigate the hazard of pressurized anhydrous ammonia within the System, and then subjecting him to, the pressurized anhydrous ammonia contained in the System.

12

70.     LLH, Lineage Logistics, and Primus breached their duty to Mr. Lamattina to exercise reasonable care to provide for the safety for Mr. Lamattina in other ways that may be shown during the trial of this matter.

71.     Said breaches by LLH, Lineage Logistics, and Primus was a proximate cause of Mr. Lamattina's suffering and subsequent Wrongful Death and a proximate cause of Plaintiff's damages.

## SECOND CLAIM OF RELIEF – NEGLIGENCE, GROSS NEGLIGENCE, WILFUL AND WANTON CONDUCT

72.     Plaintiff refers to and hereby incorporates all of his previous paragraphs of the Complaint as if they were set forth herein verbatim.

73.     All defendants owed Mr. Lamattina a duty of reasonable care while performing each of their scopes of work on the Project.

74.     Upon undertaking an active or positive course of conduct, the defendants owed to Mr. Lamattina a duty to exercise ordinary care to protect him from harm known or that could be reasonably known.

75.     In addition, these defendants working on the Project has a common law duty to perform the work under their contract or agreement within the standards of care to avoid injuring those within their area of their work.

76.     The defendants, and each of them, in failing to identify and eliminate the anhydrous ammonia hazard within *at least* their area and scope of work, committed affirmative acts that created and increased the hazard to others posed by this dangerous chemical.

77.    In addition, each defendant in concert with one another created a chaotic work environment that was a proximate cause of the ammonia release and was a proximate cause of the obstructions delaying evacuation and or exiting the site.

78.    Each defendant, while knowing the hazards presented by pressurized anhydrous ammonia, utterly failed during the course of performing its work on the Project, to take any step to ensure that this hazard was eliminated as part of the performance of their work, and further failed to take any reasonable measure to protect others working in close proximity to this hazard.

79.    As such, each defendants breached its duty of reasonable care owed to Mr. Lamattina in this matter while engaging in an active course of conduct.

80.    Additionally, defendants also breached their duty of ordinary care owed to Mr. Lamattina in other ways that may be shown during the trial of this matter.

81.    Said affirmative actions by each defendant constitutes negligence, gross negligence, and willful and wanton conduct.  In addition, said affirmative actions were done in reckless disregard to the safety of others known to be nearby and within each defendant's operations.

82.    Said negligence, gross negligence, willful and wanton conduct on behalf of the defendants was a proximate cause of Mr. Lamattina's suffering and subsequent Wrongful Death and Plaintiff's injuries and damages.

### THIRD CAUSE OF RELIEF – FAILURE TO PROPERLY SELECT AND TRAIN COMPETENT CONTRACTORS AND FAILURE TO SUPERVISE AND TRAIN EMPLOYEES AND LABORERS

83.    Plaintiff refers to and hereby incorporates all of his previous paragraphs of the Complaint as if they were set forth herein verbatim.

14

84.    It is foreseeable to one who is undertaking a major renovation project at a facility such as the Facility in question, that utilizing incompetent contractors and/or subcontractors would pose an unreasonable risk to the safety of those lawfully on site, such as Mr. Lamattina.

85.    Upon information and belief, several of the contracting entities working on the Project at the Facility were inexperienced in working around anhydrous ammonia and uneducated about the dangers posed by such a hazard.

86.    Said inexperience created an unreasonable risk to the safety of those lawfully within the area of work, in that any accidental in unintentional disturbance or release of pressurized anhydrous ammonia could severely injure or kill those nearby and others within the surrounding community.

87.    LLH, Lineage Logistics, Primus, and/or Republic, upon information and belief, failed to use reasonable care in the selection of its contractors and/or subcontractors that it utilized on this Project.

88.    In addition, LLH, Linage Logistics, Primus, Republic and/or Innovative, upon information and belief, failed to use reasonable care in the selection, training, and supervision of its workers in the recognition of, and dangers associated with, working on or near pressurized anhydrous ammonia.

89.    Said incompetent contractors and/or subcontractors was a proximate cause of Mr. Lamattina's suffering and subsequent Wrongful Death and was a proximate cause of Plaintiff's damages.

90.    Said failure to properly select, train, and supervise its workers was also a proximate cause of Mr. Lamattina's suffering and subsequent Wrongful Death and was a proximate cause of Plaintiff's damages.

91.     Said conduct constitutes negligence, gross negligence, willful and wanton conduct and was done in reckless disregard to the safety of those working nearby.

### FOURTH CAUSE OF RELIEF – INHERENTLY DANGEROUS ACTIVITY

92.     Plaintiff refers to and hereby incorporates all of his previous paragraphs of the Complaint as if they were set forth herein verbatim.

93.     Working in the vicinity, near, and upon pressurized anhydrous ammonia is inherently dangerous and constitutes an inherently dangerous activity under the circumstances raised in this Complaint and under North Carolina law.

94.     As such and in the alternative, each and every defendant owed to Mr. Lamattina (a lawful visitor at the Facility) a non-delegable duty to ensure that adequate safety precautions were taken in the performance on the inherently dangerous activity described above.

95.     Additionally and in the alternative, each and every defendant owed Mr. Lamattina a non-delegable duty to make reasonable inspections to ascertain the existence of hidden dangers (i.e. the presence of pressurized anhydrous ammonia still present during the work on the Project within the System).

96.     Consistent with the circumstances of this case, the defendants' acts related to allowing workers to work on or near hazardous anhydrous ammonia, without first warning of and/or eliminating the danger (for example by purging the lines near each defendant's area of work) created a recognizable and substantial danger inherent to the work itself. In addition this work was, at all times relevant to Plaintiff's Complaint, susceptible to effective risk control through the use of adequate safety precautions.

97.     Defendants' breach of each of their non-delegable duty to ensure that adequate safety precautions were taken to prevent the release of pressurized anhydrous ammonia constitute

16

negligence, gross negligence, willful and wanton conduct that was undertaken in reckless disregard for the safety of others such as Mr. Lamattina.

98.     Said breaches by the defendants, and each of them, was a proximate cause of Mr. Lamattina's suffering and subsequent death and was a proximate cause of Plaintiff's damages.

Wherefore having complained of the defendants, the Plaintiff prays as follows:

1. That this Court award Plaintiff damages as allowed under North Carolina's Wrongful Death Statute;

2. That this Court award Plaintiff punitive damages as allowed under this Statute;

3. For a trial by jury on all triable issues;

4. That this Court tax the costs of this action against the defendants; and

5. For other further and just relief as this Court deem just and proper.

Respectfully submitted, this 11th day of December 2020.

MARTINEAU KING PLLC

Elizabeth A. Martineau (NC Bar No. 26394
emartineau@martineauking.com
Joseph W. Fulton (NC Bar No. 44388)
jfulton@martineauking.com
P. O. Box 241268
Charlotte, NC  28224
Telephone:    (704)247-8520
Facsimile:     (704) 247-8582
*Attorneys for Plaintiff*
